David S. MONSON, Lieutenant Governor, Secretary of State of the State of Utah, Plaintiff and Appellant,

v.

The Honorable Gordon R. HALL, Justice of the Utah Supreme Court, the Honorable Dean E. Conder, the Honorable David Sam, and the Honorable J. Duffy Palmer, District Court Judges, Defendants and Respondents.

No. 15917.

Supreme Court of Utah.

Aug. 25, 1978.

---

Robert B. Hansen, Atty. Gen., Michael L. Deamer, Deputy Atty. Gen., Joseph P. McCarthy, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellant.

Milton J. Hess, of Hess, Van Wagenen, Page & Hess, Clearfield, for defendants and respondents.

MAUGHAN, Justice:

Before us is a judgment rendered in an action for declaratory relief. The trial court held District Judges Dean E. Conder, J. Duffy Palmer, and David Sam were required to stand for election in the general election of 1978, and they or their successors would begin a six year term commencing January 1, 1979. It further held Justice Gordon R. Hall was not required to declare his candidacy and stand for election to retain the office which he now holds; prior to the general election of 1986.

We affirm the court in holding the District Judges must stand for election, in the general election of 1978, but reverse the judgment in all other particulars. All statutory references are to U.C.A.1953. No costs awarded.

We first direct our attention to the situation of the three district judges. Each was appointed to a judicial office created by the legislature, to exist from and after July 1, 1976. See Sec. 78–3–1. At the outset, it is well to note Art. VIII, Sec. 3, Constitution of Utah; Sec. 78–3–1, and 20–1–7.1 et seq. are harmonious in their intent to require members of the judiciary to present themselves to the electorate for approval; whether after appointment, or by declaration independent of the appointive process.

The three District Judges were duly appointed by the Governor and began their terms July 1, 1976. Sec. 78–3–1 required them to stand for election in the general election of 1978. Such a provision is in harmony with Sec. 20–1–7.7, for the reason that had Sec. 78–3–1 not contained such requirement, the provisions of Sec. 20–1–7.7 would have required the subject judges to stand for election in the general election of 1978—this because they were appointed subsequent to a time when they could have filed a declaration of candidacy for that year. We conclude the legislature had the provisions of Sec. 20–1–7.7 in mind when it enacted Sec. 78–3–1.

The only question remaining is: For what term will the three District Judges, or their successors, be elected pursuant to an approval by the voters in the general election of 1978?

The pertinent provisions of Sec. 20–1–7.-6(d) establish the term. They are:

Subject to the appointee being retained in office by the voters as provided in section 20–1–7.7, the person appointed pursuant to this section . . . shall serve for the full term of office provided by law in case the appointment . . . is to fill a vacancy created by the establishment of a new judicial office.

The three District Judges were appointed to fill a vacancy created by the establishment of a new judicial office. The full term of office provided by law, for District Judges

is six years.[1] The three District Judges were appointed for a term of six years—two and one-half years of which will have expired at the end of 1978. Thus, they stand for election this year to be retained in office for the remainder of their term.

■ One of the cardinal rules of statutory construction requires construction with the objective of bringing consonance to Constitutional and statutory provisions, which will be congruous with expressed intent, and the applicability of the law in general.

We think this consonance and congruity is achieved by holding the three District Judges must stand for election, to be retained in office for the remainders of their terms; and such remainders are four years each, commencing on the first Monday in January 1979. This, at once, places the electoral patterns of these offices in harmony with the judicial and general election laws; and the expressed intent of the legislature.

We cannot conclude the terms should determine on July 1, 1982, at which time incumbents presumably could hold over for six months, until their successors were duly elected and qualified. Such would add six months to the term after each election, and would be contrary to Art. VIII, Sec. 24 Utah Constitution. It provides:

The terms of office of Supreme and District Judges may be extended by law, but such extension shall not affect the term for which any judge was elected.

Nor, can we conclude the legislature intended the terms of these three District Judges to begin for a full term of six years commencing on the first Monday in January 1979. Such a result would give those subject judges terms of eight and one-half years (different from all other); and, additionally, out of step with the expressions of intent in Sec. 20–1–1 et seq.

Thus, the three District Judges will serve the full terms for which they were appointed. The result does not diminish those terms; while, at the same time, it ties their offices to the judicial and general election law, with a band of harmony.

■ We turn now to the part of the judgment relating to Justice Gordon R. Hall. Again, we repair to the provisions of Sec. 20–1–1 et seq.

Under the clear, specific, and unambiguous language of Secs. 20–1–7.1, 20–1–7.6(d), and 20–1–7.7(1), a person appointed to judicial office, if he desires to retain such office, must subject himself to the electoral process. The legislative intent is expressed in clear, mandatory language.

Sec. 20–1–7.1 provides that a person appointed by the governor "*shall* be subject to election by the voters at the time and in the manner provided in this act."

Sec. 20–1–7.6(d) provides:

Subject to the appointee being retained in the office by the voters as provided in section 20–1–7.7, the person appointed pursuant to this section shall serve for the unexpired term of his predecessor in office or shall serve for the full term of office provided by law in case the appointment is to fill a vacancy in the office of a justice or judge whose term has expired or is to fill a vacancy created by the establishment of a new judicial office. [Emphasis supplied.]

The underlined phrases are those pertinent to the instant question.

The construction of the foregoing provision is clear and specific; the first phrase modifies the subject "the person appointed pursuant to this section" and requires such appointee to be subject to the electoral provision of Sec. 20–1–7.7. The provision then provides in the alternative the term of office of the person appointed based on the circumstances of the vacancy. An analysis of the sentence structure is important. There is a singular subject "the person appointed" with three alternative predicates but in each instance the subject "the person appointed" is qualified by the initial clause referring to the succeeding Sec. 20–1–7.7.

1. Sec. 67–8–4.

Sec. 20–1–7.7 provides that "any" justice or judge of the District Court, who holds office by appointment, if he desires to retain the office, to be elected at a general election, for the remainder of the term for which he was selected. There are no exceptions, all appointees must go before the electorate.

The sentence in Sec. 20–1–7.7(1), stating: "The person so elected shall hold the office for the remainder of any unexpired term . . ." is to clarify the duration of the term so that one elected could not claim his election entitled him to a full term commencing with his election. For example, one appointed to fill a vacancy created by establishment of a new judicial office, which office had a term of six years, could not contend, after holding the office as an appointee for two years prior to the general election, that his term was for six rather than four years after he was retained by the voters in a general election. This interpretation is consistent with the language in Sec. 20–1–7.6(d) setting forth the duration of the office of the appointees, subject, of course, to their retention by the voters as provided in Sec. 20–1–7.7(1).

The statutory provisions are clear, compelling, and consistent; all appointees to judicial office, if they desire to retain the office must run therefor at the general election designated by the statute.

We reach these conclusions cognizant of the holding in *Banks v. Miller.*[2]

CROCKETT and WILKINS, JJ., and JAMES S. SAWAYA, District Judge, concur.

ELLETT, Chief Justice (concurring and dissenting).

I concur in the holding regarding the District Court Judges for the reason that to hold otherwise would create confusion and uncertainty. However, I dissent from the holding as to Justice Hall's situation.

U.C.A.1953, 20–1–7.6 [1] provides:

If a vacancy occurs . . . in the office of a justice of the Supreme Court . . . .

\* \* \* \* \* \*

(b) The governor shall forthwith appoint . . . to fill such office. . . .

\* \* \* \* \* \*

(d) Subject to the appointee being retained in the office by the voters as provided in section 20–1–7.7, the person appointed pursuant to this section shall serve for the unexpired term of his predecessor in office or *shall serve for the full term of office provided by law in case the appointment is to fill a vacancy in the office of a justice or judge whose term has expired* or is to fill a vacancy created by the establishment of a new judicial office.

The term of office of Justice Henriod had expired and Justice Hall was appointed to the full term of office.

The next section of the statute (20–1–7.7) seems to me to be limited to appointments for an *unexpired term* because in stating that those appointed should run for election, it reads, shall hold the office for the remainder of any *unexpired* term.

Justice Hall is not involved in any *unexpired term.* It surely was not contemplated that he was appointed for a period of only one year, ten months and seven days and then would run for an additional term of eight years, one month and twenty-three days. The statute provides that the, "term of office of a justice of the Supreme Court, shall be ten years and until his successor is elected or appointed and qualified." [2]

It is essential that the appointment be for a full term in order to assure that there will be a Chief Justice to preside over the Court. Article VIII, Sec. 2 of our constitution provides that:

. . . The judge having the shortest term to serve, not holding his office by selection to fill a vacancy before expira-

---

**2.** 28 Utah 2d 287, 501 P.2d 1079 (1972).

**1.** L.U.1967, ch. 35, § 7.

**2.** U.C.A.1953, 78–2–1.

tion of a regular term, shall be the chief justice, . . .

If Justice Hall is required to run for election to a partial term then he, or his opponent, will be selected by the voters to fill an unexpired term and cannot be the Chief Justice. Under the opinion, no judge hereafter chosen for the office can ever be the Chief Justice unless he be young enough to run successfully for re-election.

Under our statute which now requires a justice to resign upon reaching age 72, the majority opinion will create all sorts of mischief regarding the determination of the Chief Justice.

To avoid the likelihood of the problem, the statute should be construed to limit appointments followed by election to cases where the appointment is made to fill an unexpired portion of a term. If that be done then the law is clear:

> . . . shall serve for the full term of office provided by law in case the appointment is to fill a vacancy in the office of a justice . . . whose term has expired . . .[3]

The appellant in this case contends that *selection* does not mean *election* and therefore a person *elected*, to the unexpired term of a justice will be Chief Justice whenever he has the shortest remaining time to serve. This would mean that one elected in November for a term which would end on the first Monday in January following would be the Chief Justice provided he defeated a justice who had been theretofore appointed to an unexpired term. An example would be in case the Chief Justice reached age 72 during February of his last year. The vacancy would be filled by appointment which would be good only until the fall election. The appointee could not be the Chief Justice before the election and so another justice would hold the position—but only until the election. Then the Chief Justice would be ousted, by the November successful candidate.

The Chief Justice should be a man of experience and this is assured if only those chosen for a full ten year term are eligible for the position. It seems folly to permit one elected for a six week term to be the head of the Court.

The majority opinion has no difficulty in providing that the District Judges are appointed for a term of less than two years and then may run for a full term of six years. Would that opinion give Justice Hall the same privilege of running for a full term of ten years? Consistency should so require. Also is the term six years from election or six years from January following. The same question would relate to the Supreme Court Justice.

For the reasons stated above I would hold that Justice Hall is appointed for a full ten year term and should not be required to run for election this year.

HALL, J., being disqualified, does not participate herein.